UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

IN RE:

RICKY SELLERS TRUCKING, LLC                    CASE NUMBER:   25-20296
    Debtor                                   CHAPTER 11

## PLAN OF REORGANIZATION OF
## DEBTOR-IN-POSSESSION
## DATED: July 29, 2026

BARRY A FRIEDMAN
BARRY A FRIEDMAN & ASSOCIATES, PC
ATTORNEYS AT LAW
1306 Government Street
POST OFFICE BOX 2394
MOBILE, ALABAMA 36652-2394
TELEPHONE: 251-439-7400
EMAIL: BKY@BAFMOBILE.COM

1

<u>PLAN OF REORGANIZATION OF</u>
<u>DEBTOR-IN-POSSESSION</u>

The above named Debtor, proposes the following Plan of Reorganization pursuant to Chapter 11 of Title 11 of the United States Code:

## I. DEFINITIONS

The following terms, when used in this Plan, shall, unless the context otherwise requires, have the following meanings:

**1.01.** **Administrative Claim@** shall mean a claim as it is defined in 11 U.S.C. Section 503 and as used in the Plan, shall refer to an attorney=s fee to be paid by the Debtor for services of his attorney.

**1.02.** **Allowed Claim@** shall mean a claim:

a. In respect of which a proof of claim has been filed with the Court on or before the applicable Bar Date, or, in the case of administrative expenses subject to Bankruptcy Court approval, requests for payments are filed in accordance with this Plan;

b. Which appears on the schedules and list of creditors as prepared and filed with the Court, or any amendments thereto and which are not listed as either disputed, contingent, unliquidated or unknown as to amount;

c. No claim shall be considered as an allowed claim if an objection to the allowance thereof is interposed and such objection has not been overruled by an order or judgment that is no longer subject to the initiation or an continuation of appeal or certiorari proceedings. Further, unless specifically set forth, an Allowed Claim shall not include interest on the principal amount of such claim;

2

1.03.    **Allowed Secured Claim@** shall mean an Allowed Claim arising on or before the Petition Date that is secured by a lien (as hereinafter defined) on property, in which the Debtor has an interest, which lien is not void or voidable under state or federal law, including any provision of the Bankruptcy Code, to the extent of its value, which value has either been agreed to by the Debtor pursuant to this Plan or, in the absence of such an agreement, as determined in accordance with Section 506 of the Bankruptcy Code.

1.04.    **Allowed Under secured Claims@** shall mean an Allowed Claim by because of prior perfected security interests there is no equity in the property being held as security or the lien attached to property which is worth less than the debt owed.

1.05.    **Allowed Unsecured Claims@** shall mean any Allowed Claims which are claims other than Priority Claims, Administrative Claims, Allowed Secured Claims and Allowed Under secured Claims.

1.06.    **Bankruptcy Code@** shall mean Section 101 <u>et seg</u> of Title 11 of the United States Bankruptcy Code, as amended from time to time.

1.07.    **Bar Date@** shall mean any particular deadline established by the Court pursuant to Bankruptcy Rule 3003 (c) (3) after which (i) any proof of claim filed has no effect on this Plan, and (ii) the holder of such proof of claim has no right to participate with other creditors under the Plan.

1.08.    **Chapter 11"** means Chapter 11 of Title 11, United States Code.

1.09.    **Claim@** shall have the meaning given it in Section 101(4) of the Bankruptcy Code.

1.10.    **Class@** shall mean any class into which Claims are classified pursuant to this Plan.

1.11.    **Collateral@** shall mean any asset or property in which the Debtor has an interest that is given to secure an Allowed Secured Claim.

1.12.    **Conformation Date@** shall mean the date upon which the Order of Confirmation is entered by the Court.

1.13.    **Court@** shall meant the United States Bankruptcy Court for the Souther District of Alabama, Southern Division, presiding over reorganization cases, or if necessary, the United States District Court for said district having original jurisdiction over said reorganization cases.

1.14.    **Creditors@** shall mean all persons holding claims against the Debtor.

3

**1.15.** **Creditors Committee@** shall mean the Committee consisting of those members of the Official Unsecured Creditors= Committee appointed by the Bankruptcy Court pursuant to Section 1102 (a) of the Bankruptcy Court.

**1.16.** **Debtor@ or Debtors@** shall mean MOHAJER12 CORP, both prior to and after the filing of this Chapter 11 petition initiating the reorganization case.

**1.17.** **Effective Date@** shall mean the date which is sixty (60) business days after the date on which the Order of Confirmation is no longer subject to appeal or certiorari proceeding, on which date no such appeal or certiorari proceeding is then pending, and on which date the conditions to the effectiveness of the Plan set forth in the Plan have been satisfied in full.

**1.18.** **Lien@** shall mean any charge against or interest in property to secure payment of a debt or performance of an obligation including, without limitation, any judicial or equitable lien, security interest, mortgage, deed of trust and statutory lien as defined in Section 101 of the Bankruptcy Code.

**1.19.** **Plan@** shall mean this Plan of reorganization in its present form or as it may be amended or supplemented from time to time.

**1.20.** **Priority Claims@** shall include all claims which are entitled to priority pursuant to Section 507 of the Bankruptcy Code.

**1.21.** **Secured Claims@** shall mean those claims whose payment is secured by a lien.

**1.22.** **Unsecured Claims@** shall mean the holders of Allowed Unsecured Claims.

A term used in this Plan that is not herein defined but is used in the Code shall have the meaning assigned to that term in the Code.

## II. PERFORMANCE UNDER THE PLAN-TREATMENT OF THE CLASSES

The liabilities of the Debtor, the classification of its claims, the treatment of these claims under the terms of the Plan, are herein summarized.

However, the reader is cautioned to remember that this summary is qualified in its entirely by the Plan itself, which Plan is controlling, in the event of any inconsistency.

4

## III EMERGENCY FIRST DAY ORDER -CRITIC

The Debtor utilizes its WEX pre-paid fuel card for fuel purchases on credit which is essential to its operation of its business. The court approved the continued use of said fuel card on November 6, 2025.

## IV. CLASSIFICATION OF LIABILITIES

The liabilities of the Debtor, the classification of its claims are herein summarized.

## CLASS ONE- ADMINISTRATIVE EXPENSES

1. The reasonable fees and expenses of professional persons employed by the Debtor are administrative expenses subject to the Court's approval. Barry A Friedman is the attorney for the Debtor is the only professional retained by the Debtor

2. Statutory fees required to be paid pursuant to 28 U.S.C. § 1930, have been paid and/or will be paid as of the effective date of confirmation.

## CLASS TWO TAXES: TAX CLAIMS

As of the Bar Date, the following tax claim has been filed:
1. As to taxes owed to the Internal Revenue Service:

### ECF Claim Nineteen

The Internal Revenue Service has filed Proof of Claim Number Nineteen (19) in the total amount of $11,182.24 of which $6,453.06 is priority and $4,729.18 is unsecured.

2. No other tax claim have been resolved filed.

5

## CLASS THREE - SECURED CREDITORS:

A. Proof of Claim Number One: Crossroads Equipment Lease and Finance for $226,509.94

Proof of Claim Number Two: Crossroads Equipment Lease and Finance for $232,830.71

Proof of Claim Number Three: Ally Bank c/o AIS Portfolio Services, LLC for $45,155.26

Proof of Claim Number Four: North Mill Credit Trust for $154,382.82

Proof of Claim Number Five: BMO Bank NA for $49,424.02

Proof of Claim Number Six: BMO Bank NA for $37,072.32

Proof of Claim Number Seven: BMO Bank NA for $158,881.07

Proof of Claim Number Eight: BMO Bank NA for $199,070.86

Proof of Claim Number Nine: BMO Bank NA for $415,399.85

Proof of Claim Number Ten: Midland States Bank for $172,053.00

Proof of Claim Number Thirteen: Mitsubishi HC Capital America, Inc fka ENGS Commercial Finance for $304,996.64

Proof of Claim Number Twelve: Wells Fargo Equipment Finance, Inc for $145,022.46 (Secured $97,600.00)

Proof of Claim Number Fourteen: PNC Bank, National Association for $740,040.57 (Secured $55,000.00)

Proof of Claim Number Fifteen: PNC Bank National Association for $156,771.93 (Secured $140,000.00)

6

Proof of Claim Number Sixteen: The Huntington National Bank for $48,574.09

Proof of Claim Number Seventeen: The Huntington National Bank for $34,392.05

Proof of Claim Number Eighteen: Channel Partners Capital LLC for $23,404.14 (Secured $16,975.00)

Proof of Claim Number Twenty-One: M2 Equipment Finance LLC for $72,897.74

Proof of Claim Number Twenty-Two: Stearns Bank National Association for $54,900.91

Proof of Claim Number Twenty-Three: Sweet Water State Bank for $5,446.19

Proof of Claim Number Twenty-Four: Sweet Water State Bank for $133,853.83

Proof of Claim Number Twenty-Five: Sweet Water State Bank for $186,927.27

Proof of Claim Number Twenty-Seven: Sweet Water State Bank for $24,037.18

Proof of Claim Number Twenty-Eight: Sweet Water State Bank for $78,927.62

Proof of Claim Number Amended Twenty-Nine: -Sweet Water State Bank for $741,357.55

Proof of Claim Number Thirty: Pathward National Associations for $131,703.53 Secured $50,000.00)

Proof of Claim Number Thirty-One: Volvo Financial Services, a division of VFS US LLC for $177,582.58

7

Proof of Claim Number Thirty-Two: Volvo Financial Services, a division of VFS US LLC for $185,456.41

Proof of Claim Number Thirty-Three: Volvo Financial Services, a division of VFS US LLC for $188,457.93

Proof of Claim Number Thirty-Four: Volvo Financial Services, a division of VFS US LLC for $233,222.62

Proof of Claim Number Thirty-Five: Financial Pacifice Leasing for $41,262.52

B.   Allowed claims for arrearages, which were classified as secured as agreed between the Creditors and your Debtor and which were approved in the Conditional Denial Orders:

Proof of Claim Number One: Crossroads Equipment Lease and Finance for $10,337.63

Proof of Claim Number Two: Crossroads Equipment Lease and Finance for $13,615.86

Proof of Claim Number Fourteen: PNC Bank, National Association for $3,438.02

Proof of Claim Number Fifteen: PNC Bank National Association for $4,198.81

8

## CLASS FOUR-GENERAL UNSECURED CREDITORS

A.      Creditors who have filed unsecured claims as of July 28, 2026.

Proof of Claim Number Eleven: JPMorgan Chase Bank, NA s/b/m/t Chase Bank USA NA for $10,405.46

Proof of Claim Number Nineteen: Internal Revenue Department for $4,729.18

B.      Creditors who have filed a split claim, showing the value of the collateral as secured and showing an unsecured difference between value and debt;

Proof Claim Number 12: Wells Fargo Equipment Finance, Inc for $47,422.46

Proof of Claim Number 14: PNC Bank National Association for $19,040.57

Proof of Claim Number 15: PNC Bank National Association for $16,771.93

Proof of Claim Number 18: Channel Partners Capital LLC for $6,429.14

C.      Creditors, other then through listed above, whose collateral has been surrendered and/or repossessed, but who have not yet amended their claim as of July 27, 2026

Proof of Claim Number Four: North Mill Credit Trust for $154,382.82

Proof of Claim Number Ten: Midland States Bank for $172,053.00

Proof of Claim Number Thirty: Pathward National Associations for $131,703.53 (Secured $50,000.00)

## CLASS FIVE- HOLDERS OF STOCK IN THE DEBTOR

The Debtor is an LLC and its members are Ricky Seller and the member manager is Ricky Sellers

9

<h1 style="text-align:center">V. TREATMENT OF CLAIMS</h1>

1.  **ADMINISTRATIVE CLAIMS:**

    The administrative fees and expenses, which include the attorney fees already approved and as yet unpaid as will as those attorney fees and expenses that have and will continue to accrue until the Debtor is in compliance with its confirmed Plan, as well as the Administrative Claim (Proof of Claim Number Eight) of the Internal Revenue Service.

2.  **PRIORITY CLAIMS:**

    **ECF Claim Number Nineteen**

    Internal Revenue Service (Proof of Claim Number Nineteen) in the amount of $6,453.06, which will be paid in full at 100% in equal monthly installments over sixty (60) months at zero percent (0%) in the amount of $107.55 per month beginning forty-five (45) days following the effective date of Confirmation and continuing month to month thereafter, until paid in full.

3.  **TREATMENT OF SECURED CLAIMS AS OF JULY 29, 2026:**

    **ECF Claim Number One: Crossroads Equipment Lease & Finance, LLC**

    | | |
    |---|---|
    | Amount: | $226,509.94 |
    | Secured by: | 2025 Volvo 80270 |
    | Resolution: | Conditional denial Order dated January 6, 2026 |
    | | Debtor defaulted and Relief from Stay granted |

    **ECF Claim Number Two: Crossroads Equipment Lease & Finance, LLC**

    | | |
    |---|---|
    | Amount: | $232,830.71 |
    | Secured by: | 2025 Volvo 80271 |
    | Resolution: | Conditional denial Order dated January 6, 2026 |
    | | Debtor defaulted and Relief from Stay granted |

10

### ECF Claim Number Three: Ally Bank c/o AIS Portfolio Services, LLC

| | |
|---|---|
| Amount: | $45,153.26 |
| Secured by: | 2018 F250 Truck |
| Resolution: | Paying direct in the amount of $1,326.85 |

### ECF Claim Number Four: North Mill Credit Trust

| | |
|---|---|
| Amount: | $154,382.82 |
| Secured by: | 2023 Peterbilt 389 |
| Resolution: | Relief From Stay granted |

### ECF Claim Number Five: BMO Bank NA

| | |
|---|---|
| Amount: | $49,424.02 |
| Secured by: | 2021 Peterbilt 730722 |
| Resolution: | Surrendered |

### ECF Claim Number Six: BMO Bank NA

| | |
|---|---|
| Amount: | $37,072.32 |
| Secured by: | 2020 Peterbilt 648225 |
| Resolution: | Conditional denied Order granted Making payments of $833.00 per month |

### ECF Claim Number Seven: BMO Bank NA

| | |
|---|---|
| Amount: | $158,881.07 |
| Secured by: | Vanguard Globe Trailer A000B |
| Resolution: | Conditional denied Order granted Making payments of $3,570.00 per month |

### ECF Claim Number Eight: BMO Bank NA

| | |
|---|---|
| Amount: | $199,070.86 |
| Secured by: | 2024 Great Dane Trailer 605381 |
| Resolution: | Conditional denied Order granted Making payments of $4,474.00 per month |

### ECF Claim Number Nine: BMO Bank NA

| | |
|---|---|
| Amount: | $415,399.85 |
| Secured by: | 2024 Volvo 688250/2025 Volvo 684984 |
| Resolution: | Conditional denied Order granted Making payments of $9,334.00 per month |

### ECF Claim Number Ten: Midland States Bank

Amount: $172,0543.00
Secured by: 2021 Peterbilt 750153
Resolution: Conditional denied Order granted
Making payments of $4,779.25

### ECF Claim Number Twelve: Wells Fargo Equipment Finance, Inc

Amount: $97,600.00
Secured by: 2024 CIMC Cool Glide Trailer 035980
2024 7300 Carrier 91737208
2024 CIMC Globe Trailer 036054
2024 7300 Carrier 91730089
Resolution: NONE

### ECF Claim Number Thirteen: Mitsubishi HC Capital America, Inc f/k/a ENGS Commercial Finance

Amount: $304,996.64
Secured by: 2020 Peterbilt 732091
2022 Utility Trailer 6567019
Resolution: Conditional denied Order granted
Making payments of $7,983.21

Secured by: 2024 Peterbilt 605216
Resolution: Surrendered

### ECF Claim Number Fourteen: PNC Bank, National Association

Amount: $55,000.00
Secured by: 53' Reefer Trailer 36822 with carrier 7300
Resolution: Conditional denied Order granted
Making payments of $1,562.74

### ECF Claim Number Fifteen: PNC Bank, National Association

Amount: $140,000.00
Secured by: 2024 Volvo 36396
Resolution: Conditional denied Order granted
Making payments of $3,998.87

### ECF Claim Number Sixteen: The Huntington National Bank

Amount: $48,574.09
Secured by: 2022 Peterbilt 768557
Resolution: NONE

12

**ECF Claim Number Seventeen: The Huntington National Bank**

    Amount:        $34,392.05
    Secured by:    2020 CIMC Trailer 2813
    Resolution:    NONE

**ECF Claim Number Eighteen: Channel Partners Capital, LLC**

    Amount:        $16,975.00
    Secured by:    2014 Transcraft Flatbed Trailer
    Resolution:    Pending Consent Adequate Protection Agreement
                 Making payments of $814.87

**ECF Claim Number Twenty-One: M2 Equipment Finance LLC**

    Amount:        $72,897.74
    Secured by:    2020Peterbilt 64074
    Resolution:    Surrender

**ECF Claim Number Twenty-Two: Stearns Bank National Association**

    Amount:        $54,900.91
    Secured by:    2022 Peterbilt 787929
    Resolution:    NONE

**ECF Claim Number Twenty-Three: Sweet Water State Bank (Loan #3007855)**

    Amount:        $5,446.19
    Secured by:    2009 Reiitnouer Maximeser Trailer
    Resolution:    ********

**ECF Claim Number Twenty-Four: Sweet Water State Bank (Loan #3008108)**

    Amount:        $133,853.83
    Secured by:    2003 Great Dane Trailer 23908
                 2004 Great Dane Trailer 001905
                 2006 Great Dane Trailer 702795
                 2007 Great Dane Trailer 700634
                 2007 Utility Trailer 159904
                 2013 Utility Trailer 686217
                 2014 Utility Trailer 866811
    Resolution:    *********

13

**ECF Claim Number Twenty-Five: Sweet Water State Bank**
**(Loan #300911)**

|  |  |
|---|---|
| Amount: | $186,927.27 |
| Secured by: | 2003 Great Dane Trailer 02308 |
|  | 2004 Great Dane Trailer 001906 |
|  | 2006 Great Dane Trailer 702795 |
|  | 2007 Great Dane Trailer 709634 |
|  | 2007 Utility Reefer Trailer 159904 |
|  | 2013 Utility Trailer Semi 686217 |
|  | 2014 Utility Trailer 86611 |
|  | 2009 Magnolia 91435188 |
|  | 2017 Utility Trai Reefer Trailer 6948674 |
|  | 2013 Reitnower Flatbed 030133 |
|  | 2014 Utility Trailer 686405 |
|  | 2017 Utility Trailer 6948627 |
|  | 2015 Utility Trailer 230716 |

UCC-Kuboto M7060 with Loader
together with everything

Mortgage
Resolution: *******

**ECF Claim Number Twenty-Six: Sweet Water State Bank**

|  |  |
|---|---|
| Amount: | $0.00 |
| Secured by: | Supplement to all other Proof of Claims |
| Resolution: | ****** |

**ECF Claim Number Twenty-Seven: Sweet Water State Bank**

|  |  |
|---|---|
| Amount: | $24,037.18 |
| Secured by: | Mortgage on 1800 S Main Street, Linden, Alabama 36748 |
| Resolution: | ******* |

**ECF Claim Number Twenty-Eight: Sweet Water State Bank**
**(Loan #3009279)**

|  |  |
|---|---|
| Amount: | $78,927.62 |
| Secured by: | 2020 Peterbilt 653058 |
| Resolution: | ******** |

14

### ECF Claim Number Twenty-Nine: Sweet Water State Bank

Amount:      $714,327.55
Secured by:    Mortgage
                   2009 Magnolia Trailer 91435188
                   2017 Utility Trailer
                   2013 Reitnouer 030133
                   2014 Utility Trailer 686405
                   2017 Utility Trailer 948627
                   2015 Utility Tailer 230716
                   Kubota M7060 with attachments
Resolution:    *****

****** Consolidated all notes with a $15,000.00 monthly payment payable $7,500.00 on the 5th of the month and $7,500.00 on the 20th of the month

### ECF Claim Number Thirty: Pathward National Association

Amount:      $72,897.74
Secured by:    2020 Peterbilt
Resolution:    Relief from Stay granted
                   Collateral surrendered

### ECF Claim Number Thirty-One: Volvo Financial Services, a division of VSF US LLC

Amount:      $177,582.58
Secured by:    2024 Volvo 636395
Resolution:    Conditional denied Order granted
                   Making payments of $4,165.09

### ECF Claim Number Thirty-Two: Volvo Financial Services, a division of VSF US LLC

Amount:      $185,456.41
Secured by:    2024 Volvo 653120
Resolution:    Conditional denied Order granted
                   Making payments of $4,188.32

15

**ECF Claim Number Thirty-Three: Volvo Financial Services, a division of VSF US LLC**

| | |
|---|---|
| Amount: | $188,457.93 |
| Secured by: | 2024 Volvo 660420 |
| Resolution: | Conditional denied Order granted Making payments of $4,095.15 |

**ECF Claim Number Thirty-Four: Volvo Financial Services, a division of VSF US LLC**

| | |
|---|---|
| Amount: | $23,322.61 |
| Secured by: | 2020 Wallbash 168599 |
| Resolution: | Conditional denied Order granted Making payments of $1,176.00 |

**ECF Claim Number Thirty-Five: Financial Pacifice Leasing**

| | |
|---|---|
| Amount: | $41,262.52 |
| Secured by: | 2024 CIMC Special Refrigator Volvo 636395 |
| Resolution: | Conditional denied Order granted Making payments of $2,035.00 |

4. **UNSECURED CLAIMS AS OF JULY 29, 2026:**

A. The Debtor proposes to pay those creditors, who have filed allowed unsecured claims, at least a two percent (2%) pro rata dividend, to be paid monthly, without interest over sixty (60) months, starting forty-five (45) days following the effective date of Confirmation.

Proof of Claim Number Eleven: JPMorgan Chase Bank, NA s/b/m/t Chase Bank USA NA for $10,405.46

Proof of Claim Number Nineteen: Internal Revenue Department for $4,729.18

B. Creditors who have filed a split claim, showing the value of the collateral as secured and showing an unsecured difference between value and debt;

| | |
|---|---|
| Proof Claim Number 12: | Wells Fargo Equipment Finance, Inc for $47,422.46 |
| Proof of Claim Number 14: | PNC Bank National Association for $19,040.57 |

16

Proof of Claim Number 15:   PNC Bank National Association for $16,771.93

Proof of Claim Number 18:   Channel Partners Capital LLC for $6,429.14

C.   Creditors whose collateral has been repossessed and/or surrendered, who have not yet amended their claim as of July 29, 2026 **WILL NOT BE INCLUDED,** in making the above payments until the proof of claims is amended and filed, and the Debtor proposes to pay those creditors, who have filed allowed unsecured claims, at least a two percent (2%) pro rata dividend, to be paid monthly, without interest over sixty (60) months, starting on the 15th of the month, forty-five (45) days after the proof of claim has been amended.

## VI  Additional Provisions for the Internal Revenue Service

Additional provisions related to the combined debt owed to the Internal Revenue Service:

1.   Upon a default under the Plan, the administrative collection powers and the rights of the United States will be reinstated as they existed prior to the filing of  the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of Notice of Federal Tax Lien and the powers of levy, seizure, and sale  under the Title 26 of the United States Code.  Proposed language to accomplish this purpose is as follows:

A.   If the debtor fails to make payment of any tax to the Internal Revenue Service within ten (10) days of the due date if such deposit or payment, of if the Debtor or the successor in interest fails to file any required federal tax return by the due date of such return, then the United States may declare that the Debtor is in default of the Plan.  Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

B.   If the United States declares the Debtor or the successors in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities shall become due and payable immediately upon written demand to the Debtor or the successor in interest.

17

C.    If full payment is not made within fourteen (14) days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of Title 26 of the United States Code.

D.    The claim bar date for administrative claims does not apply to post-petition taxes, which will be paid no later than the effective date.

2.    Nothing in the Plan or subsequent Confirmation Order shall affect the set-off rights of the Internal Revenue Service.

3.    The Plan does not discharge any debt to the United States that is not dischargeable under applicable Federal Law, and that the United States does not consent to the Bankruptcy Court's jurisdiction over matters reserved to other Federal Courts, such as the Court of Federal Claims or Tax Court.

### VII: Allowance and Disallowance of Claims

1.    Disputed claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

2.    Delay of distribution on a disputed claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

3.    Settlement of disputed claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

18

## VIII MISCELLANEOUS OPERATING PROVISIONS

The Debtor shall continue to administer its business affairs. For so long as any payments to Creditors provided in the Plan of reorganization remains unpaid, the Reorganized Company shall:

A.      Pay and discharge all taxes, assessment, and governmental charges or levies imposed upon it or upon its income or profits, or upon any properties belonging to it prior to the date upon which penalties attach thereto, and all lawful claims which, if unpaid, might become a lien or charge upon any such properties, provided that it shall not be required to pay any such tax, assessment, charge, levy or claim that is being contested in good faith by proper proceedings or that was assessed prior to the Petition Date.

B.      Maintain insurance, including casualty insurance with responsible and reputable insurance companies or associations in such amounts and covering such risks as is usually carried by companies engaged in similar business and owing similar properties in the same general areas in which they operate.

C.      Preserve and maintain its corporate existence, rights, franchises and privileges in the jurisdiction of its incorporation, and qualify and remain qualified as a foreign corporation in each jurisdiction in which such qualification is necessary or desirable in view of its business and operations or the ownership of its properties and with respect to which failure to qualify would materially adversely affect its business or credit or any collateral.

D.      Comply with the requirements and all applicable laws, rules, regulations and order of any governmental authority, non-compliance with which would materially adversely affect its business or credit or any collateral.

E.      Maintain and preserve all of its properties, necessary or useful in the proper conduct of its business, in good working order and condition, ordinary wear and tear excepted.

F.      Pay all liabilities, claims, or charges incurred or arising from and after the Effective Date.

G.      Not declare or pay any dividends on any of its stock now or thereafter outstanding, until in substantial compliance with the Plan.

H.      It is anticipated that the present management structure of the Debtor shall be retained throughout the life of the Plan.


## IX MISCELLANEOUS CHAPTER 11 INFORMATION

1.      EXECUTORY CONTRACTS:

The Debtor is still renegotiating with lease holders.

19

2. <u>ACCOUNTS RECEIVABLES:</u>

N/A

3. <u>LITIGATION:</u>

No litigation pending at this time.

4. <u>FINANCIAL PROJECTIONS:</u>

The ability of the Debtor to perform its obligations under the Plan is based upon the assumption that its sales will increase and that it can continue to control its operating expenses. However, because performance of the Plan is dependent upon the Debtor's favorable future sales and operating performance, there can be no guaranty or assurance that the Debtor will be able to perform its obligations under the Plan.

**X**
**REQUEST FOR CONFIRMATION**

The requirements of all provisions of Section 1129 (a) of the Code, except paragraph (8) thereof, are met with regard to the Plan.

**XI RESERVATION OF POWERS**

Nothing in the Plan shall be construed to be a waiver of the Debtors avoidance powers under the Code, and Debtor expressly reserves such avoidance powers.

**XII EFFECT OF CONFIRMATION**

As of the Effective Date, the effect of confirmation shall be as provided in Section 1141 of the Code.

**XIII MISCELLANEOUS**

14.1 The headings in the Plan are for convenience of referenced only and shall not limit or otherwise affect the meaning contained in the contents of the Plan.

14.2 Upon Confirmation of the Plan, all parties thereto are affected thereby and their heirs, successors and assigns shall be forever bound, and all such parties agree and shall be bound.

20

14.3    Various types of Claims are defined in this Plan.  Save for exceptions noted elsewhere, this Plan is intended to deal with all Claims against the Debtor of whatever character whether or not contingent or liquidated and whether or not allowed by the Court pursuant to Section 502(a) of the Bankruptcy Code.

14.4.   This Plan may be modified, amended or corrected upon application of Debtor prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Bankruptcy Code provided that the Court finds that such modification does not materially or adversely affect any Creditor of Class of Creditor.

14.5.   All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or mailed by regular or certified mail, returned receipt requested, as follows: Barry A. Friedman, Attorney for Debtor, 1306 Government Street, Mobile, Alabama 36604/ Post Office Box 2394, Mobile, Alabama 36652 -2394.

\s\ BARRY A FRIEDMAN
BARRY A FRIEDMAN, Attorney for Debtor
1306 Government Street, (36604)
Post Office Box 2394
Mobile, Alabama 36652-2394
Dated On 29th day of July, 2026

21